the cotton was shipped, then by its terms the defendant would not be subject to a loss by fire, except under certain contingencies to be hereafter explained.

At the same time this bill of lading was executed by Harris, Hunt & Co., acting as agents of the defendant, the steamboat Adriatic also executed a bill of lading, and, as it appears, with Harris, Hunt & Co., by which it was agreed that the goods should be transported from Memphis to Cairo, and there delivered to Mr Abbott, the agent of the defendant, and the price fixed as stated in this bill of lading. They were to be taken at $4.75 per bale and by way of the Illinois Central Railroad. The steamer Adriatic arrived at Cairo on the evening of the 10th of November, the shipments having been made on the 8th, during the night. Shortly after its arrival they transferred the cotton belonging to the plaintiff, with other cotton, to the barge lying by the side of the steamer. On the following day, November 11, the whole of the cotton was on board the barge, and the barge was fastened to the landing some little distance from where the steamer was lying. Not very long after the barge was placed there the fire was discovered, by which a very considerable portion of the cotton was consumed, and so far as this plaintiff is concerned, there was a loss of one hundred bales.

Now if you find that there was no contract limiting the liability of the defendant in relation to the fire, then the defendant would be responsible for the loss by fire, when the cotton came into its possession. If you shall find that there was a contract which limited the liability of the defendant, and which exempted the defendant from such liability, then the remaining question is, whether the defendant exercised reasonable care of this property. That is a question of fact for the jury to determine.

It seems to be conceded by the counsel on both sides, and it appears by the evidence we have had before us, that the proper way of transporting cotton is to leave it uncovered. The fact seems to be that if it could be covered completely, so as to prevent all sparks from reaching it, that would be the safest way of transportation; but this is not the general way of transport, and is said to be impracticable. It is found best to leave it uncovered, so that if it catch fire it can be extinguished at the earliest possible moment.

It is for you to say, if you shall find that there was this limitation upon the defendant as a common carrier, and that it was not subject to a loss by fire, in consequence of a special contract, whether the defendant is responsible in consequence of want of due care in the management of this cotton. You will consider, firstly, the value of the property; secondly, the character of the property; thirdly, the circumstances under which it was placed; and it is for you to say whether there was due care exercised in reference to the cotton. If there was due care, and if there

was an exemption, then the plaintiff cannot recover; if there was not due care used by the defendant, then, notwithstanding there might have been an exemption in the special contract, still the defendant would be responsible. If you shall find that the defendant is responsible, the damages will be the net value of the property in the market to which it was to be transported, which, I suppose, would be the value of the cotton at Boston, deducting freight.

It is stated that the cotton was insured by an insurance company in Boston, and that the action is brought by the plaintiff on behalf of the insurance company. That it is competent for the plaintiff to do.

Verdict for defendant.

This case was affirmed by the supreme court in 3 Wall. [70 U. S.] 107, where the case is fully stated, and the same principles announced as in the circuit court decision. See authorities there referred to, and also Woodward v. Illinois Cent. R. Co. [Case No. 18,007].

YORK RIVER, The. See Case No. 5,078.

## Case No. 18,144.
### The YORK RIVER STEAMBOAT CO.
[Cited in Wallis v. Chesney, Case No. 17,110. Nowhere reported; opinion not now accessible.]

YORK STREET FLAX SPINNING CO. (UNITED STATES v.). See Case No. 16,781.

YOST (LLOYD v.). See Case No. 8,437.

## Case No. 18,145.
### Ex parte YOUNG.
[6 Biss. 53.][1]

District Court, N. D. Illinois. April, 1874.

WAGER CONTRACTS — "PUTS" — SETTLING DIFFERENCES—INADEQUACY OF CONSIDERATION—CLAIMS AGAINST BANKRUPT'S ESTATE.

1. "Puts," or the privilege for a nominal consideration of delivering a large quantity of grain within a certain time at a specified price, when taken of parties notoriously running a "corner," are wager contracts, and void as against public policy.
[Cited in Wolford v. Powers, 85 Ind. 304.]

2. Where no delivery of the grain was contemplated by the parties, but they expected simply to settle the differences as established by future prices, the contract is simply a wager, and therefore void.
[Cited in Clarke v. Foss, Case No. 2,852; Gilbert v. Gauger, Id. 5,412.]

3. These "puts" are also within the Illinois statute concerning gaming, and the English decisions under 8 and 9 Vict. are applicable as authorities.

4. Claims against an estate for $400,000, founded on a consideration of less than $19,000,

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]